Byer *vs.* Etnyre and Besore.—1844.

---

FREDERICK BYER *vs.* S. ETNYRE AND C. H. S. BESORE.—
*December*, 1844.

There is no precise form of return prescribed by law, for returns of levies made by constables to writs of *fieri facias*. The term *levied* in such returns imports a seizure, by common usage.

Seizure under an execution is a matter in *pais*, which may be proved by *parol* evidence.

It is not the constable's return which gives title to a purchaser under a *fieri facias*, but the seizure and sale under the writ. The return is evidence, but not the only admissible proof of those facts.

A statement of the seizure and sale in the receipt for the purchase money given to the vendee, would be as effectual to transfer the title to the *per-*

*sonal property* described in it, as the most formal return, endorsed on, or attached to the writ.

The seizure, sale, and payment of the purchase money, may also be estabtablished by oral testimony, and be equally valid for the purchaser as a return.

The act of 1729, ch. 8, sec. 5, requires that a deed for personal property, when the grantor remains in possession, shall be acknowledged before one justice of the county, where the grantor resides. Where the acknowledgement omitted to state the official character of the officer before whom it was made, it may be proved by the admissions of the parties.

That act prescribes no form of acknowledgment; it does not require the authority of the justice to take it, to appear on the face of his certificate, nor is it necessary to state that the justice was a resident of the county where he acted.

Where the justice, taking the acknowledgment of a deed under the act of 1729, ch. 8, sec. 5, does *not reside* in the county where it was taken, the instrument is as inoperative, as if the person taking the acknowledgment were not a justice.

If an acknowledgment contrary to the fact, state the residence of the party to be in a different county from that of the justice, the error may be proved, and the instrument established under the act of 1729.

A false statement in the certificate of the justice may be disproved, and an instrument thus invalidated.

The case of *Conelly vs. Bowie*, 6 *Harr. and John.* 141 cited and explained.

Under the act of 1729, ch. 8, sec. 5, the recording of a bill of sale of personal property within *twenty days*, in the records of the same county is as necessary to its validity, as is, its acknowledgment.

Where the bill of exceptions contain no evidence of such recording, the usual certificate thereof by the county clerk not appearing by the record to have been indorsed on the bill of sale, it is not admissible in evidence in an action at law between the creditors of the grantor, and a defendant claiming to rely on the grantor's title.

The statement "at the request of *Z.*," (the grantor) "the following bill of sale was recorded" preceding a bill of sale in a bill of exceptions, where the admissibility of the deed as evidence was objected to, not signed by any person, is no proof of the recording of such instrument.

*M.* and *L.* rented a farm from *Z.*, and agreed to give him one half of all the grain raised on it as a rent for the same, and on the 8th May 1841, they executed a bill of sale to him for a variety of chattels, and also for all their "portion of grain now growing on his, the said *Z's* farm, and all that should be sown or planted, each succeeding year." This instrument was not proved to have been recorded under the act of 1729; and contained a warranty of title by the grantors, and a declaration of a delivery of part of the goods, &c., for the whole. In the fall of 1841, *M.* and *L.* sowed a crop of wheat; and on the 23rd February 1842, agreed with *Z.* that he should offer the grain in the ground for sale for his own use, and credit them

with its proceeds. No sale having in fact been made, *E.* and *B.*, judgment creditors of *M.* and *L.*, who were still in the occupancy of the land, on the 26th February 1842, levied a *fieri facias* on the growing grain as the property of *M.* and *L.*; and sold the same on the 9th March, under the writ. The purchaser agreed with *E.* and *B.* that his liability should depend on the question whether the crop belonged, of right, to *M.* and *L.* It appeared *B.* had a knowledge of the bill of sale of May 1841, but not until after the grantors thereof became indebted to *E.* and *B.*, though before they issued their writ of *fi. fa.* In an action by *E.* and *B.*, against the purchaser of the grain, to recover the price thereof, the *County court* refused to instruct the jury upon the prayer of the defendant, that the bill of sale though invalid as a grant, yet, as a covenant between the parties, was effectual, and would entitle *Z.* to hold the grain, if the jury should believe that he had paid the consideration mentioned therein, and the plaintiffs had notice of its existence anterior to issuing their writs, and *Z.* had permission before their issue to sell the grain for his own use. Upon appeal by the defendant, the exception to such refusal was abandoned:

Where permission was given by a tenant to his landlord to sell grain growing in the ground, for his own use, on the premises, and in view of the grain, and the landlord proceded to advertise such grain for sale, whether such facts amounted to a delivery of the grain, is a question dependent upon the intention of the parties, to be passed on by the jury.

When, before a court can grant a prayer it must assume the non-existence of all the testimony not enumerated in it, and thus exclude material evidence from the consideration of the jury, or assume facts of which no proof had been offered, to grant it would be to transcend its jurisdiction, and exert a power which belonged exclusively to the jury, or which could not be exercised in the particular case, either by the court, or jury.

APPEAL from *Washington* County Court.

This was an action of *assumpsit*, commenced on the 12th October 1842, by the appellees, partners, trading under the firm of *Etnyre* and *Besore*, against the appellant. The plaintiff's declared that the defendant, being indebted to them, in the sum of, &c., for a certain crop of wheat, in the ground, of the plaintiff's, before that time bargained and sold, by the plaintiff to the defendants; for matters properly chargeable in account; and for an account stated between the parties.

The account filed with the declaration, was as follows:

"*Frederick Byer* bought of *Etnyre* and *Besore*,—1842, March 9. To 55 acres of wheat, in the ground, at constable's sale, a $4.40, $242.—Interest from 9th March 1842."

The defendants pleaded *non assumpsit*, on which issue was joined.

1st Exception. At the trial of this cause, it was admitted, that the sum of money for which the suit is brought, was for the purchase, at constable's sale, of certain grain, which was raised by *James P. Mayhue* and *George Lowman*, on a farm which they had rented, and held as tenants of *Frederick Ziegler*. That by the terms of the said writing, the said *Mayhue* and *Lowman*, were to give one half of all the grain raised on the farm, as rent for the same. That the sum of money, for which this suit is brought, was for the purchase money of the tenants' share of the crop, sown in the fall of 1841, and reaped in the summer of 1842, and that at the time of the said purchase, by the defendant, it was understood and agreed between the plaintiffs and the defendant, that the liability of the defendant for the said purchase money, should depend upon the question, whether the said tenants' share of the said crop belonged, of right, to the said *Mayhue* and *Lowman*, at the time of the said sale, so far as the rights of the plaintiffs, as creditors of said *Mayhue* and *Lowman*, as hereinafter set forth, were to attach or not on the same, or to the said *Frederick Ziegler*.

The plaintiffs then, to support the issue on their part joined, offered in evidence to the jury the following judgments, viz:

*Etnyre* and *Besore* vs. *George Lowman*, 22nd February 1842.

*Same* vs. *J. P. Mayhue* and *George Lowman*, 25th February 1842.

Same against same, 25th February 1842.

And a *fi. fa.* issue, 25th February 1842, on the judgment against *George Lowman*, endorsed:

"Levied on the interest of *fifty-six* acres of grain, in the ground, as the property of *J. P. M.* and *G. L.*, to satisfy the within claim; also, one stack of hay. *A. G. Snyder*, constable. February 26th, 1842. Settled in full by sale, March 9th 1842."

20      v.2

Writs of *fi. fa.* were issued and similarly returned on the two other judgments. And then proved, by *Abraham G. Snyder,* the constable, that in virtue of said *fi. fas.,* which were placed in his hands by the plaintiffs, he seized the grain growing on the said farm, so rented, to which said *Mayhue* and *Lowman* were entitled under their said lease from *Ziegler,* as aforesaid, and sold the same to the defendant, who became the purchaser, under the understanding and agreement aforesaid; and which said *fi. fas.* were delivered to the officer to whom directed, on the evening of the day on which they were issued and bear date, a little before sundown. To the admissibility of which said writs and endorsements the defendant, by his counsel, objected, for the following reasons:

1. That the endorsements on the said writs do not sufficiently show a levy upon, or seizure of the grain in question.

2. That the said endorsements do not sufficiently show a sale of the said grain, and that they do not show the return of the officer, of what was done under the said writs. But the court (BUCHANAN, A. J.,) overruled the said objections, and permitted the evidence to go to the jury. To which opinion of the court, overruling the said objections, the defendant excepted.

2ND EXCEPTION. The defendant, then, after the admissions and testimony detailed in the first bill of exceptions, and which he prays may be taken and considered in this, his second bill of exceptions, to support the issue on his part joined, offered in evidence the following instrument of writing:

"At the request of *Frederick Ziegler,* the following bill of sale was recorded, May 24th, 1841.

Know all men by these presents, that we, *James P. Mayhue* and *George Lowman,* of *Washington* county, in the state of *Maryland,* for and in consideration of the sum of *fourteen hundred and thirty-seven dollars and fifty cents,* current money, to us in hand paid by *Frederick Zeigler* of *Washington* county, in the said state, at and before the sealing and delivering of these presents, the receipt whereof, we, the said *J. P. M.* and *G. L.,* do hereby acknowledge, have granted, bar-

gained and sold, and by these presents do grant, &c., unto the said *F. Z.*, his, &c., all the goods, household stuff, implements and furniture, particularly mentioned, expressed and contained in the schedule, hereinafter particularly mentioned, that is to say : one gray horse, &c., and also, all our portion of grain now growing on his, the said *Z's* farm ; also, all that shall be sowed or planted each succeeding year. To have and to hold, all and singular, the said, &c., the premises above bargained and sold, or mentioned and intended so to be, to the said *F. Z.*, his, &c. And we, the said *J. P. M.* and *G. L.*, for ourselves, &c., all and singular, the said goods, &c., unto the said *F. Z.*, his &c., against us, the said *J. P. M.*, *G. L.*, our, &c., and against all and every other person or persons, whatsoever, shall and will warrant and forever defend by these presents, of all and singular, which said goods, &c. we, the said *J. P. M.* and *G. L.*, have put the said *F. Z.*, in full possession, by delivering to him, the said *F. Z.*, one table spoon, at the sealing and delivering of these presents, in the name of the whole premises, hereby bargained and sold, or mentioned and intended to be so, unto him, the said *F. Z.*, as aforesaid. In witness whereof, we have hereunto set our hands and affixed our seals, the 8th day of May, 1841.

James P. Mayhue, (Seal.)<br>George Lowman, (Seal.)

State of *Maryland*, *Washington* county, to wit : on this 8th day of May 1841, personally appears *James P. Mayhue* and *George Lowman*, and acknowledge the aforegoing instrument of writing to be their act and deed, according to the act of Assembly in such case made and provided. Acknowledged before *Wm. Webb.*"

And also offered to prove, from the records of *Washington* county, that *Wm. Webb*, before whom said instrument of writing was acknowledged, was, at the time thereof, a justice of the peace of the state of *Maryland*, in and for said county, duly commissioned and qualified, (but this being admitted by the plaintiffs, the proof thereof as offered was waived,) to the reading of which instrument of writing to the jury, the plain-

tiffs objected, upon the ground that the said *William Webb* does not upon the face of the said acknowledgment, make any mention of his official character, or state himself to be a justice of the peace ; which objection the court, (T. BUCHANAN, A. J.,) sustained, upon the ground aforesaid, and refused to permit the said instrument of writing to be read to the jury ; to which opinion and refusal of the court, the defendant excepted.

3RD EXCEPTION. The defendant then, in addition to the facts mentioned in the first and second bill of exceptions, which he prays may be considered as incorporated in this, his third bill of exceptions, offered in evidence to the jury by *James P. Mayhue,* one of the persons who had rented the farm from the said *F. Z.,* as aforesaid, and also one of the defendants in the said writs of *fieri facias,* that on or about the 23rd of February 1842, it was agreed between himself and the said *F. Z.,* that the said *Z.* should offer the grain in the ground, the proceeds of which is the subject matter of this suit, together with the other personal property, in said instrument of writing mentioned for sale, for his own use ; and that the proceeds of the said sale should be applied to the payment of the debt due the said *Ziegler,* and for the security of which the said bill of sale was executed. The debt so due to the said *Ziegler,* was then about eleven hundred dollars. That at the time of its being so agreed, that the said *Z.* should sell the grain and personal property, it was also understood, that if the said grain did not bring a fair price, of which said *M.* and *L.* were to be the judges and determine, that then the said *Z.* should proceed to cut the said grain ; and after paying himself out of the said grain for the cutting and securing the same, he should give the said *M.* and *L.* credit for the residue on the said debt. That the said *M.* made the arrangement with the said *Z.,* to save trouble. That considering the said instrument good and valid, as vesting a title in the said *Z.* to the said grain, he agreed to let him sell the said grain in his own name, as it would be better and save the trouble of selling it themselves, and then assigning the notes to the

said *Z.* That the said *Z.*, the next day after said agreement, or perhaps the day following that, did advertise the said grain and personal property for sale. That the printed hand bill, here shown by the witness, is one of the advertisements printed, and put up at public places in the neighborhood, in relation to the said sale. The said advertisement here follows, to wit : &c.

The said *M.* further proved, that he was in possession of said farm on which said grain was then growing, under the said lease from said *Z.*, at the time he made said arrangement for said *Z.* to sell said grain as aforesaid, and continued in possession of the same up to the 1st of April 1842, when his lease expired. The said *Z.* was occupying a house on said farm at the time, and which he had occupied from the commencement of said lease. The defendant further proved by the said *J. P. M.*, that before the said *F. Z.* offered the said grain and personal property for sale, as aforesaid, in a conversation which he had with the said *Charles H. S. Besore*, one of the plaintiffs, the said *Besore* mentioned that he had a knowledge of the said bill of sale or instrument of writing, so executed by the said *M.* and *L.*, to the said *F. Z.* But that he had no such knowledge, until after the indebtedness of said *Mayhue* and *Lowman* to said *Besore* had taken place, though before he issued the said *fi. fas.* That the said *Ziegler* in pursuance of said notice by hand bill, sold said personal property, except said grain ; that the sale thereof amounted to four hundred dollars and upwards.

The defendant thereupon prayed the court to direct the jury, that the said instrument of writing though it may not be valid as a grant, yet that as a covenant between the parties, it is good and effectual, and will entitle the said *Frederick Zeigler* to hold the said grain under such contract, if the jury believe from the evidence, that the said *Zeigler* had paid the consideration mentioned in the said contract, and especially, if the plaintiffs had notice of the existence of such contract, anterior to the issuing of their said writs of *fieri facias*, &c. ; that the said *Ziegler* had permission, before the issuing of said

writs, from the said *Mayhue* and *Lowman*, to sell the same for his own use ; which opinion and direction the court refused to give. To which refusal of the court, the defendant excepted.

4TH EXCEPTION. The defendant, upon the same facts stated in the former bills of exceptions, prayed the court to direct the jury, if they believe from the evidence that the said *Frederick Ziegler* had permission and authority from the said *Mayhue* and *Lowman*, before the delivery of the said writs of *fieri facias* to the constable, to proceed and sell said grain in the ground for his own use, and that this permission and authority were given on the premises, and in view of the said grain in the ground; and that said *Ziegler* did, thereupon, proceed to advertise the said grain for sale, before said writs of *fieri facias* were so delivered, that the said facts amounted to a delivery of said grain to the said *Ziegler*, and the plaintiffs are not entitled to recover ; which opinion and direction the court refused to give. To which refusal of the court the defendant excepted.

The verdict and judgment being against the defendant, he prosecuted the present appeal.

The cause was argued before ARCHER, DORSEY, CHAMBERS, SPENCE, STONE and SEMMES, J.

By WEISEL and PRICE for the appellant, and
By MASON and F. A. SCHLEY for the appellees.

DORSEY, J., delivered the opinion of this court.

The County court, we think, committed no error in overruling the appellant's objections to the admissibility of the writs of *fieri facias*, and the endorsements thereon. The first of which is, "that the endorsements on the said writs do not sufficiently shew a levy upon, or seizure of the grain in question." There is no precise form of return to such executions prescribed by law; and that made by the constable on this occasion, as far as this objection is concerned, is in accordance with the returns usually made by such officers ; and by common usage and acceptation, the term "levied" when thus

used by constables, imports a seizure. But suppose the facts were otherwise; seizure is a matter in *pais*, which may be proved by *parol* evidence, and was so proved by the constable who made the same, prior to any objection being taken to the testimony. It is not the constable's return which gives title to a purchaser under a *fieri facias*; but the seizure and sale under the writ. And the constable's return is evidence, but not the only admissible evidence of those facts; a statement thereof, in the receipt for the purchase money given to the vendee, would be as effectual to transfer the title to personal property, as the most formal return indorsed on, or attached to the writ; and if there had been no return made, nor receipt given by the constable, and the seizure, sale, and payment of the purchase money were established by oral testimony only, the title of the purchaser would be equally good.

The remarks made upon the first objection are, for the most part, equally applicable to the second. The parol evidence of the constable obviating the defects, imputed to the returns made to the writs of *fieri facias*.

The only question raised on the second bill of exceptions in the court below, and on which the court decided was, whether a bill of sale, under the act of 1729, chap. 8, which enacts, "that from and after the end of this session of Assembly, no goods or chattels, whereof the vendor, mortgagor or donor shall remain in possession, shall pass, alter or change, or any property thereof be transferred to any purchaser, mortagee, or donee, unless the same be by writing, and acknowledged before one provincial justice, or one justice of the county where such seller, mortgagor, or donor shall reside, and be within twenty days recorded in the records of the same county," was admissible in evidence, where the magistrate, who took the acknowledgment, omitted to state therein the official character in which he acted; and where it was admitted by the parties in the cause, that the person before whom the acknowledgment was made, was at the time thereof, a justice of the peace of the State of *Maryland*, in and for *Washington* county, duly commissioned and qualified as such.

The only ground assigned for the rejection of the testimony offered, was, that the person who took the acknowledgment did not, upon its face, make any mention of his official character, or state himself to be a justice of the peace. Which objection to the evidence offered, the bill of exceptions states, that "the court sustained, upon the ground aforesaid, and refused to permit the said instrument of writing to be read to the jury." The act of 1729, prescribes no form of acknowledgment to be taken by the justice; much less does it require that the authority of the justice to take the acknowledgment, should appear upon its face. With equal, if not greater propriety, might it be insisted, that where the acknowledgment is made before a justice of the county, it should state, that the person was a resident thereof, who made the acknowledgment. Without such residence, the writing acknowledged is as inoperative and void, as if the person taking the acknowledgment were not a justice of the county. And yet, perhaps, not an instrument of the kind can be found, where the acknowledgment contains any such assertion of residence. And should the acknowledgment, contrary to the fact, state the residence of the party to be in a different county from that of the justice, the erroneous statement might be disproved, and the instrument acknowledged, established in its operation under the act of 1729 : although upon the face of the acknowledgment it appeared to be a nullity. See the case of *Gittings vs. Hall*, 1 *Harr. & John.*, 18; and so, if the acknowledgment had stated the person taking it to be a justice of the county, when, in truth, he was not so, the falsehood might be proved, and the instrument invalidated. And, *a fortiori*, may the defect be supplied, by testimony *aliunde*, where the acknowledgment omits to state the official character of him, by whom it was taken. And the proof offered, even if not admitted to be true, as was the case on this occasion, was much stronger and more conclusive evidence of the fact of official authority, than would have been the mere statement thereof, in the body of the acknowledgment. This view of the case we think fully sustained by the opinion of this court

in *Connelly vs. Bowie,* 6 *Harr. & John.* 141, where, in an action of ejectment, a certified copy of a deed was admitted as evidence, by the county court, although the acknowledgment thereto, neither stated the official character of the persons taking it nor the county in which it was taken. This court, in reviewing the judgment of the county court, say: "The official character of the persons before whom the supposed acknowledgment was taken, does not appear on the face of it, and the paper is equally silent as to the county in which the acknowledgment was taken; *nor is there any proof in the record showing, that John Ball and Turner Wootton were justices of the peace ; or that the acknowledgment was made in the county, in which the lands were then situate ;*" and for these reasons reverse the judgment of the county court. Is not the inference irresistible, that had there been proof in the record, *dehors* the certified copy produced, shewing that *John Ball* and *Turner Wootton,* (the persons before whom the acknowledgments were taken,) were justices of the peace of, and that the acknowledgment was made in, the county in which the lands were situate, the judgment of the county court would not have been reversed, for the defects appearing on the face of the deed; the copy whereof had been admitted by the county court, in evidence to the jury?

But, although the county court, in the case before us erred, in refusing to permit for the reason assigned, the instrument of writing to be read to the jury, as offered by the appellant, yet its refusal was justified upon a ground which does not appear to have been brought to its notice, but which this court are not at liberty to overlook. By the act of 1729, chapter 8, under the provisions of which the bill of sale before us was taken; its being recorded within twenty days "in the records of the same county," is as necessary to its validity, as is its acknowledgment. The record contains no evidence of such recording: the usual certificate thereof, by the county clerk, not appearing by the record to have been indorsed on the bill of sale. It is true, that preceding the bill of sale there is the following written statement, viz : "At the request

21    v.2

of *Frederick Zeigler* the following bill of sale was recorded, May 24th, 1841." But this statement is signed by nobody; and where or by whom recorded, *non apparet.*

The third bill of exceptions having been abandoned, this court are relieved from its consideration.

We concur with the county court, in its rejection of the appellant's prayer, in the fourth bill of exceptions, that if the jury "believe from the evidence, that the said *Frederick Zeigler* had permission and authority from the said *Mayhue* and *Lowman,* before the delivery of the said writs of *fieri facias,* to the constable, to proceed and sell said grain in the ground, for his own use, and that the permission and authority were given on the premises, and in view of the said grain in the ground; and that the said *Zeigler,* did thereupon, proceed to advertise the said grain for sale, before said writs of *fieri facias* were so delivered, that the said facts amounted to a delivery of the said grain to the said *Zeigler,* and the plaintiffs are not entitled to recover." Before the court could grant the prayer thus made to it, it must assume the non-existence of all the other oral testimony given in the cause; because, by the prayer, no part of it is submitted to the finding of the jury. In the absence of all proof, that any consideration was paid for the said permission and authority : or, that it was delegated by *Mayhue* and *Lowman* to *Zeigler,* on account of any debt due from the former to the latter; or for what purpose this delegation of power was made; to call on the court below to deduce the fact of the delivery of the grain to *Zeigler,* from the facts submitted by the prayer to the finding of the jury, was to ask the court to transcend its jurisdiction, and exert a power exclusively within the cognizance of the jury. The authority delegated, and its incipient exercise by *Zeigler,* are perfectly consistent, either with the delivery, or non-delivery of the grain. Delivery, in this case, was a fact dependent upon the intention of the parties, to be passed on by the jury, upon evidence being offered, which was legally sufficient for them to assume

its existence. And so far from the court granting the appellant's prayer, upon the finding by the jury of the facts enumerated, with equal if not greater propriety might the appellees have prayed an instruction from the court to the jury, that from their finding, only, the facts submitted to them in the appellant's prayer, they were not warranted in finding the delivery of the grain to *Zeigler.*

Concurring in opinion with the county court, in its admission of the testimony stated in the first bill of exceptions; and in its refusal to grant the appellant's prayers in the second and fourth bills of exceptions, we affirm its judgment.

JUDGMENT REVERSED.