Decree reversed and petition dismissed,<br>the costs to be paid out of the estate.

---

## EDWARD GAITHER vs. THOMAS MARTIN.

It is well settled, that a fi. fa. cannot be levied after the return day, but if a levy has been made before, the property may be sold after the return day is passed.

If the sheriff, in making a levy, takes a list of the property, and makes no re-

turn on the writ, and in a subsequent proceeding, to which he is a party, he offers proof of the levy having been made, he must produce the list, or establish its loss so as to let in secondary proof in relation to it.

Where it had been proved that a list of the property was taken when the levy was made, it was error in the court to instruct the jury, that if it were necessary to prove a levy it might be proved by parol, because it assumes, that a list was not made in opposition to the proof that it was.

If a levy can be proved by parol, it is when no list of the property has been made, or it has been lost, or other property, not included in the list, has been levied upon.

Declarations of a defendant in a *fi. fa*, that he had given a list of property to the sheriff, in order that the latter might not go to his house to make a levy, if admissible at all, could only be so when made prior to the sale under the *fi. fa.*, being then adverse to the party's interest and not in conflict with the rights of others.

The party offering such declarations must show, that they were made prior to the sale, and if he fails to do this they must be rejected.

Admissions of a bankrupt, made before the act of bankruptcy, are admissible to prove the debt of the petitioning creditor, but not if made after, because of the intervening rights of creditors and the danger of fraud.

If any portion of the testimony offered be admissible, it is no error to admit it.

Where evidence had been admitted, tending to prove that a levy had been made under a *fi. fa.* and a list of the property taken, there is no error in admitting an advertisement by the sheriff as proof that the property alleged to have been levied upon had been advertised for sale.

When a sheriff is about to sell property under an execution, it is his duty to give public notice of the intended sale.

It being proved that an inventory and appraisement of the property was made in writing when the distress for rent was levied, parol proof of the contents of such inventory and appraisement cannot be received unless their loss be first established.

Proof that after diligent, but unsuccessful search for the papers, according to the best of witness' recollection and belief, he had given them to G., who was too sick to come into court, and who said, that he did not have them, but was under the impression that he had handed them over to defendant, is not sufficient proof of their loss, assuming G's declarations to be admissible.

The fact that a witness was taken sick the day previous to the trial is not a circumstance sufficient to warrant the admission of his declarations on the ground of necessity.

It is the party's duty, when the case is called, to see that his witnesses are in attendance, and if he goes to trial instead of taking a continuance

because of the absence of a witness who is sick, such absence and sickness will not render the declarations of the witness admissible.

Such testimony being without the sanction of an oath and the opportunity of cross-examination, should always be received with caution, and only when there is an appropriate necessity.

In some of the States if there is a witness to a written instrument, the execution of which is to be proved, he must be produced, if alive, unless disqualified from interest or some other cause, or is a non-resident, or has been absent from the State for a considerable time; but the act of 1825, ch. 120, relates to this subject in Maryland.

The fact that a subscribing witness to a deed had gone to sea and had not been heard from for four years, though diligent inquiry had been made, is sufficient to let in secondary evidence of his handwriting; but a temporary absence from the State is not.

The paper in this case having been traced to the possession of defendant, if at all, by inadmissible testimony, the offer to prove its loss by defendant's own oath was properly rejected.

An instruction, that if the jury find *"that after the sale"* the sheriff placed the goods under the control of the defendant. &c., then it is not necessary to show that they were personally delivered, is erroneous, because it assumes the fact of the sale.

No matter how clear and satisfactory the proof was to establish the sale, the court could not assume that it took place, as it would be an invasion of the rights of the jury.

Where the plaintiff had offered evidence to show that at the time of sale the goods were handed over to the defendant and placed under his control, but were not by him removed from the premises, and other evidence on the question of delivery, testimony by defendant, that the property had never been in his use and possession, but in that of another person, ever since the sale, ought to have been admitted.

APPEAL from Washington county court.

This was an action of *assumpsit* brought by the appellee, the former sheriff of Washington county, on the 19th of November 1850, against the appellant, to recover the value of property sold by the plaintiff to the defendant under writs of *fieri facias.* The declaration contains the common counts. The plea was *non assumpsit.* The cause was tried below on the 9th of April 1851, before MARTIN, C. J., MARSHALL and WIESEL, A. J., and in the course of the trial six exceptions were taken by the defendant, all of which are fully stated in the opinion of this court. The verdict and judgment were in favor of the plaintiff, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, and TUCK, J.

*Jervis Spencer* for the appellant.

The principal question is as to the sufficiency of the sheriff's levy; or in other words, whether his acts constituted a levy at all, which conferred upon him the power of vesting a title in the purchaser. If they did not, he could not recover. *Story on Contracts, sec.* 480.

The next leading question is, whether the sheriff having left the goods upon the premises, and they having been seized under a distress for rent and sold before the sheriff's sale, the levy was not in that way lost, and the subsequent sale ineffective either to confer title on the purchaser or impose an obligation to pay.

The *fi. fas.*, under which the levies are said to have been made, were issued on 31st August, 9th September and 10th September 1846, all returnable the 3rd Monday in November 1846. These had not been returned at the time of the trial, at March term 1851, and there was no memorandum of any kind by the sheriff, that a levy had been made. Neither does the parol proof show at what time in the fall of 1846 the levy was made, or that it was made before the return day. The only paper produced to specify the property and establish the levy, was the appraisement, dated 20th April 1847, long after the return day of the *fi. fas.* There are certain legal ceremonies and incidents to a levy which must be observed. The sheriff must take the property into his own custody, either by himself or his agent, and without it there is no levy. *Sewell on Sheriffs,* 250.   8 *Price,* 95.

We maintain, therefore, on the first exception:—1st. The evidence does not prove a levy, but the contrary.  2nd. It could not have proved a levy, unless it had shown that the levy was made before the return day of the *fi. fa.*, in which respect it was defective.  3rd. The certificate of the appraisers could not prove a levy.  A certificate procured by the sheriff, of private parties, under no legal responsibilities, is

too remote and secondary. 4th. The sheriff having omitted to take possession of the property, could not, after the return day, cure the material defects in his proceedings.

The second exception relates to property of H. H. Gaither, the defendant in the *fi. fas.*, at his dwelling house, and a list of property, which the witness stated the said H. H. Gaither had told him he had given to the sheriff, to save him the necessity of going to his house to make a levy, was relied upon and admitted, to prove a levy; the witness did not state at what time H. H. Gaither had made to him this declaration.

This testimony is liable to the objections:—1st. It admits the declarations of a party who was competent as a witness. 2nd. It makes a mere admission of the acts and intentions of a third party, supply the place of a levy, when those declarations could be no evidence of title, in any contest that might arise between the defendant in this action and any other party. 1 *Starkie*, 41. 3rd. It is also liable to the objection, that there could be no levy unless the sheriff took the property.

The third exception presents the question, whether the advertisement by the sheriff of the sale of the property could supply the place of the levy, which we maintain it could not do, being long after the period when the levy could have been properly made, and it would be establishing a dangerous precedent to give it such an effect.

The fourth exception presents two questions:—1st. Whether it was necessary, in order to prove a sale of the same property under a prior distress for rent, to produce the inventory and appraisement, or account for its absence in order to let in parol proof? 2nd. Whether a sufficient foundation was laid, for producing secondary evidence of the goods taken and sold under the distress? As to the first, it would be a hard rule to permit the sheriff to use secondary evidence of his levy and sale, which were all under his own control, and exclude the defendant, who, in the distress, would not in law be regarded either as actor or custodiary. To require the party who buys or sells under a distress, to prove the sale by the distress pa-

pers, would be as hard as to require a merchant's invoice to be produced to prove his sales. . As to the second proposition, it is submitted, that the proper custodiary of the papers having sworn that he had made diligent search and could not find them, and that he believed them to be lost, a sufficient foundation for the introduction of secondary evidence was laid, and his having sworn that he was under the impression that he had given one of the papers to Gelwicks, to whom he had applied for it, and who said he was not in possession of it, could not affect the right.   It was a mere statement as to the manner in which a part of the search had been made, and did not show that the paper was in Gelwicks' hands.   1 *Phil. Ev.*, 454. 14 *Serg. and Rawle*, 200.   2 *Meeson and Welsby*, 212.   2 *Barn. and Cres.*, 160.   The appraisement was also immaterial.

In the sixth exception, the defendant offered testimony to rebut the testimony of J. D. Ridenour, in the fourth exception, that the property was handed over to the defendant and placed under his control.   Taken in connection with our theory of the case, that the sale of the sheriff could vest no title, we think it was material and competent for us to overcome, by testimony, the inference arising from the plaintiff's testimony, that the defendant had possession, and we think the court erred in rejecting the testimony.   The instruction of the court in this exception affirms the right of the plaintiff to recover, without regard to his right to convey the property, in which we also think they were wrong.   The court in this instruction, decide, that the sheriff had absolutely and competently made the levy and sale; thus, we think, erroneously deciding the law of the case, and assuming a decision of the facts further than they were warranted.   The delivery proved by the plaintiff does not appear to have been sufficient, independent of all of the defendant's proof.   5 *H. & J., Hays vs. Lusby*, 485.

*J. Dixon Roman* for the appellee.

*1st Exception.*  Abandonment of the goods would have lost

the sheriff's title as against another execution, but the seizure was valid as between the parties here. As between the parties, the arrangement that the list of goods should be regarded as the levy, is good. The return would have been "*made*" and this would not have helped the levy. The case in 8 *Price*, 95, is a case between the sheriff and one claiming title under a subsequent execution. The presumption is, that the levy was made before the return day; the evidence shows that the sale was made in the fall of 1846, and the return day was the 3rd Monday of November 1846. There is no law that requires an inventory to be made in writing, but here it was so made and produced.

*2nd Exception.* The declarations and admissions of H. H. Gaither were admissible to show, that if there was any irregularity it was waived by him and could not be objected to by the defendant. That the admissions were admissible, see 1 *Greenlf. on Ev. sec.* 181. 2 *Starkie,* 42, *Williams vs. Bridges.* 1 *Moody and Malkin,* 45, *Clay vs. Langslow,* 22 *Eng. C. L. Rep.,* 244. The evidence would defeat H. H. Gaither in a suit against the purchaser. Again, the admissions of a party under whom a party claims, are admissible. It makes no difference as to the time when these declarations were made, for we do not seek to impeach the title of the appellant, they are only offered to show, that the defendant in the execution assented to the levy and sale.

*3rd Exception.* The advertisement was not offered to prove a levy, but to show that the property had been duly offered at public sale. It proved the identity of the goods sold with those levied upon.

*4th Exception.* If a paper is traced into the possession of a party who is alive, he must be called to give some account of it. 1 *Philips on Ev.,* 456. 2 *G. & J.,* 254, 283, 284. The paper here was traced to the hands of the appellant himself. The case of *Clement's Lessee vs. Ruckle,* 9 *Gill,* 326, is similar to this.

*5th Exception* is a branch of the 4th, and ought to be taken in connection with it.

*6th Exception.* There is no error in this exception. The evidence was entirely immaterial. This court will not reverse where they see from the record that the verdict must eventually be against the party appealing. See cases on this point collected in *Md. Digest*, 40, *sec.* 98.

ECCLESTON, J., delivered the opinion of this court.

Sundry writs of *fieri facias* against H. H. Gaither, the brother of the appellant, were placed in the hands of the appellee, as sheriff of Washington county, all returnable to November term 1846. On the 20th of April 1847, under those writs, the sheriff sold certain personal property, as belonging to II. H. Gaither, to the appellant, amounting to the sum of $311. On account of which the purchaser made two payments of $50 each, and another of $100. At sundry times he promised to pay the balance, but failing to do so, this suit was instituted to recover the same.

In the first bill of exceptions the different writs of *fieri facias* are set out at length. It is then admitted they were issued on subsisting judgments, and that no returns had been made upon them by the sheriff. The plaintiff then offered to prove by John D. Ridenour, that in the fall of the year 1846, he was a deputy sheriff under the plaintiff, and as such, called at a room in Hagerstown, occupied as an office by H. H. Gaither and a certain J. A. Wagoner; that Wagoner alone was in the office at the time. That the witness called for the purpose of levying said executions, and "took a list of the property in the office, and offered to produce and read said list to the jury, as follows:"

"We, the undersigned, being duly summoned and sworn by the sheriff of Washington county to appraise the goods and chattels of Henry H. Gaither, taken by virtue of sundry writs of *fieri facias*, issued out of Washington county court, viz: one at the suit of the Hagerstown Bank against H. H. Gaither; one at the suit of Thomas Ringer against II. H. Gaither, W. H. Fitzhugh and J. O. Wharton; one at the suit of Sarah A. Lyester against H. H. Gaither and M. S. Van

---

Lear; and one at the suit of Stewart Gaither's executors against H. H. Gaither, and for fees, do appraise the same in current money as follows, to wit." Then follows a list of property, and concludes with, "Given under our hands and seals, this 20th day of April 1847," which is signed and sealed by four appraisers.

After this the bill of exceptions goes on to state: "And that he said in the office, that he levied on the property to satisfy executions in the sheriff's hands; that he is not sure, but thinks, he mentioned the particular executions, and that he left the property in the office until said Wagoner left it, and when he left it, on the first of April 1847, the witness took the key, locked up the office, with the goods in it, and retained the key until the sale; and that said Henry H. Gaither had been previously informed of said executions and of the intended levy." In stating the objection to this testimony it is said: "To which evidence so offered for proving a levy the defendant, by his counsel, objected. But the court overruled the objection, and admitted the testimony as competent to prove a levy, being of opinion, that even if it were necessary in this case to prove a levy, it might be proved by parol." The defendant excepted to the admission of the proof and to the opinion of the court.

The principle is well settled, that a *fi. fa.* cannot be levied after the return day. If a levy is made before, the property may be sold after, the return day is passed.

If, when making a levy, a list of the property is taken, where no return is made upon the writ, and in a subsequent proceeding the sheriff, being a party, offers proof of the levy having been made, such list must be produced or the loss of it established, so as to let in secondary proof in relation to it. See *Farmers and Drovers Bank, vs. F. dyce*, 1 *Penn. S. Rep.*, 457. In *Byer vs. Etnyre and Besore*, 2 *Gill*, 150, there was no evidence of any written list of the property levied upon having been made.

The witness in this case stated, that when he made the levy he took a list of the property. With such evidence before the jury, the court erred in saying, if it were necessary

to prove a levy, it might be proved by parol.  The testimony in reference to the list of the property is very unsatisfactory. The paper, on its face, purports to have been made on the 20*th of April* 1847, when it was signed by the appraisers. And yet the witness produced and offered to read it to the jury, as the list prepared by him at the time of the levy, in the preceding fall.  Whether he was correct in this or not, could only be decided by the jury.  If they believed he was mistaken, and the paper offered was not the original one prepared by him, under the instruction of the court that the levy could be proved by parol, they, of course, would have concluded that the production of the original list, or any proof of its contents, after showing its loss, was wholly unnecessary, and regarding such a paper as unimportant, they might rely exclusively upon the parol proof of the witness to establish the levy.

If a list was made at the time of the levy, as the sheriff undertook to prove the levy, he could not do that in this case without producing the list.  And the court had no right to assume that such a list was not made, in opposition to the statement of the witness that it was.  Which assumption is necessarily included in their saying the levy could be proved by parol.

Their opinion would be equally erroneous, upon the hypothesis, that the list made at the time of the levy, is the same which was offered in evidence.  Because if a levy can be proved by parol, it is when no list of the property is made, or it has been lost, or other property not included in the list has also been levied upon, which was not alleged on the occasion alluded to by the witness, and to which this exception has reference.

In the second bill of exceptions it appears the plaintiff offered to prove that H. H. Gaither had said he had given the sheriff the list of property exhibited by the witness, in order that it might not be necessary for the sheriff to go to his dwelling-house to make a levy.  Which testimony was objected to, because it was not proper to give in evidence the

declarations of a person who might be a witness. And also because the evidence was not sufficient to prove a levy upon the property mentioned in said list.

If these declarations were admissible, they could only be so because they were made prior to the sale, being then adverse to his interest, and not in conflict with the rights of others. It might be very different after a sale. Considering his title to the property gone by the sale, the restraining influence of interest would no longer exist. And rights in other parties might intervene, which would be materially affected, by admitting the subsequent declarations of such a party.

The admissions of a bankrupt, made before the act of bankruptcy, may be received to prove the debt of the petitioning creditor, but not his declarations made after, because of the intervening rights of creditors and the danger of fraud. 1 *Greenlf. on Ev.*, *sec.* 181, and the authorities referred to in *note* 3.

The proof offered does not state when the conversation alluded to took place between the witness and Mr. Gaither, whether before or after the sale. Such testimony, when admissible at all, must be so as one of the exceptions to the general rule of evidence, it was therefore necessary for the party offering it to show, that it possessed all the requisites to bring it within the exception. *Medley vs. Williams*, 7 *G. & J.*, 67. And having failed to prove that the declarations were made prior to the sale, they ought to have been rejected.

The third exception also presents a question as to the admissibility of evidence.

The plaintiff offered to prove by John D. Ridenour, that the property mentioned in the lists, set out in the first and second bills of exceptions, was advertised for sale in a newspaper published in Hagerstown. One of said advertisements was produced and appears in the record. All of this evidence was objected to on the part of the defendant, but the court did not sustain the objection. In this there was no error, if any portion of the testimony was admissible. *Budd vs.*

*Brooke*, 3 *Gill*, 220.   Without referring to the proof offered
in the second bill of exceptions, that which is stated in the
first to have been admitted, tended to prove that a levy had
been made and a list of the property taken.   Whether this
was done before the return day of the writ was a question for
the jury; the court could not assume that it was or was not.
Under such circumstances, the admission of proof that the
property alleged to have been levied upon had been advertised
for sale, was not erroneous in this case.   When a sheriff is
about to sell property under an execution, it is his duty to
give public notice of the intended sale.

It will avail nothing to say, the subsequent proceedings in
the cause show, that the property purchased by the defendant
at the sale, is not the same which is mentioned in the first bill
of exceptions.   We are confined on this question to the third
and the two prior exceptions.   But if we could look to the
subsequent proceedings, we should be strongly inclined to
believe, that the books, if not other articles specified in the
list of sales, are the same as those mentioned in the first ex-
ception.

The fourth exception shows, that on the 20th of April 1847,
a sale took place, at which E. Gaither, the defendant, attended
and purchased a variety of articles, amounting in the whole
to the sum of $311, being the same property included and
charged in the account filed in the case.   That he declared
he purchased them for the use of his brother, the said H. H.
Gaither.   And the witness Ridenour states, that "the articles
were at the time of the sale handed over to the defendant and
placed under his control, but were not by him removed from
the premises.   That he had furnished several lists of the sale
to the defendant, who had paid from time to time $200 on it,
as credited; that he had often promised to pay the whole and
never objected to any want of delivery."   The plaintiff also
proved by Lewis Martin, that he, the witness, "called several
times on the defendant for payment of the account, and he
promised to pay it, the last time being August 29th, 1850."

The defendant then offered to prove by D. H. Smith, that

H. H. Gaither was tenant of a dwelling-house under George A. Bender. That about the 1st of April 1847, the witness, acting under a distress warrant from said Bender, levied on all the property in said dwelling, and some other property on the premises. That he made a regular inventory of the articles, and also had an appraisement thereof, "all in writing; that to the best of his recollection and belief, he had retained in his own hands, and that he had made diligent but unsuccessful search for them in the last few days, and believed they were lost. That to the best of his recollection and belief, he had given the appraisement to a certain Charles F. Gelwicks, who acted as clerk for him at the sale, and that witness had never seen them since; that Charles F. Gelwicks is still living and now in Hagerstown, but is too sick, since yesterday, to come into court; that he had this morning inquired of said Gelwicks for said papers, who said he did not have them, but was under the impression he had handed them over to the defendant." After which the defendant offered to prove by said Smith, that the articles so levied on by him, he set up at public sale, some of which were sold to the defendant and some to strangers; "but the defendant, who is the brother of H. H. Gaither, made some compromise with the said Bender, or paid off the rent due and stopped the sale." The defendant also offered to prove by Smith, that the articles sold by him to the defendant, were the same which the plaintiff sold to him on the 20th of April, and are included in the account of sales filed in this cause by the plaintiff.

The proof thus offered on the part of the defendant was objected to, and the court did not permit the evidence to go to the jury, in which we think they were right.

According to the testimony proposed to be given by the defendant, when the distress was levied, an inventory and appraisement of the property were made in writing. They, of course, were better evidence to prove what property was taken than parol testimony. And having already said in a previous part of this opinion, that where a levy is made under a *fi. fa.*, if a list of the property is taken in writing, and proof

of such levy becomes necessary, parol evidence cannot be received, unless the loss of the list is first established, we do not see why the same rule should not be held applicable to proceedings under a distress.

If it be necessary to prove the loss of the inventory and appraisement, it is certain that the testimony contained in this exception is not sufficient for that purpose. Smith's statement is rather confused and cloudy, but we suppose he is to be understood as intending ultimately to say, that after a diligent but unsuccessful search for those papers, according to the best of his recollection and belief, he had given them to Gelwicks.

Admitting the declarations of Gelwicks to be proper testimony, they do not prove the loss. On the contrary his impression is, that he handed the papers over to the defendant.

In *Clement's Lessee vs. Ruckle*, 9 *Gill*, 326, a witness speaking of a letter he had received, said it was "either lost or delivered to one of the counsel in the case, and that witness made diligent search for the same but could not find it." This was not deemed sufficient to admit parol proof of the contents of the letter. The court, however, were right in holding the evidence not sufficient to let in secondary proof, because the declarations of Gelwicks were not admissible. They could only have been received as coming within an exception to the general rules of evidence, on the ground of necessity; and the circumstances relied upon, did not create such a necessity for the admission of those declarations, as has been recognised by the elementary writers or in adjudged cases.

In some of the States, if there is a witness to a written instrument, the execution of which is to be proved, such witness must be produced, if living, unless he is disqualified from interest or some other cause, is a non-resident, or has been absent from the State for a considerable time. The act of 1825, ch. 120, relates to this subject in Maryland. *Edelen vs. Gough*, 5 *Gill*, 106. In *Spring vs. S. C. Insurance Co.*, 8 *Wheat.*, 268 *and* 282, proof that a subscribing witness to a

deed had gone to sea, and had not been heard from for four years, although diligent inquiry had been made for him, was deemed sufficient to let in secondary evidence of his hand-writing. But a casual absence out of the State would not have a similar effect, as appears by a decision reported in *Littell's Select Cases*, 240.

The sickness of Gelwicks commenced the day previous to the trial, or, at least, the day before Smith was examined in regard to it. And as this fourth bill of exceptions, which contains his testimony, as well as the first, second and third, all bear date the same day, it is a fair inference that the trial was not going on when Gelwicks was taken sick. When the case was called, it was the duty of the defendant to know whether his witnesses were in attendance. And as it seems Gelwicks must have been absent, that afforded a good ground for a continuance of the case, if the party had asked for it; but going to trial, instead of doing so, such absence, under the circumstances, did not render the declarations admissible. Such testimony being without the sanction of an oath, and affording no opportunity to the opposite party for cross-examination, should always be received with caution, and only when there is an appropriate necessity, which, we think, did not exist in this instance. See 4 *Vol. of Cowen and Hill's Ed. of Philips on Ev.*, 1223, *note* 867.

What might have been the effect of the sickness of the witness, if it had commenced after the trial began, we are not called on to decide.

The fifth exception arises upon an offer on the part of the defendant, to prove by his own oath the loss of the appraisement. If it was traced to his possession, it was by the declarations of Gelwicks only. Having decided that these could not be received in evidence, we must affirm the decision of the court in rejecting the proof here offered.

From the sixth and last exception it appears, that the defendant offered to prove by H. H. Gaither, that the property charged in the account filed by the plaintiff, never had been in the use and possession of the defendant, but, from the time

of the sale, had continued to be in the use and possession of the witness. This testimony being objected to, was rejected by the court, and at the same time they instructed the jury, if they should "find that after the sale the sheriff placed this property under the control of the defendant, as the property of the defendant, and that this was accepted by the defendant as a delivery of the property, and that the defendant afterwards permitted the property to remain in the possession of Mr. Henry Gaither, then it is not necessary for the plaintiff to show, that the goods sold were formally delivered by the sheriff to the defendant."

In *Crawford vs. Berry*, 6 *G. & J.*, 70, the defendant asked the court to instruct the jury, that the plaintiff was not entitled to recover for certain reasons set forth in the prayer. The court refused to give the instruction, and if they had stopped there, the appellate tribunal would have found no fault with the decision.

The declaration contained three counts. The first a special count on the assignment of a single bill, and the other two for *oxen* sold and delivered.

After refusing the instruction already spoken of, the court instructed the jury, "that if they should find from the evidence that at the time of the rendition of the judgment, and the return of the *ca. sa.*, and entering it not called, Magruder was insolvent and incapable of paying his debts, and continued so ever since, the appellee was entitled to a verdict for such sum as they should find due from the sale of the oxen." The Court of Appeals held this to be erroneous, because it assumed "the fact of the sale of the oxen, and that the assignment of the single bill was on account of the prior debt so incurred, which were facts to be found by the jury."

In *Brooks vs. Elgin*, 6 *Gill*, 259, a prayer was granted, which asked the court to instruct the jury, that if they believed "*that after the refusal of the R. R. Company to pay* or accept the draft of J. P. Shannon, notice within a reasonable time, *of which the jury are the judges*, was given to Nicholas, Perdue & Co., of such non-payment or non-acceptance, then

21    v.3

the defendant is not entitled to be credited with the amount of the said draft." The granting of this prayer was the foundation of the defendant's second bill of exceptions. In reversing this decision the Court of Appeals say: "We think that the court below erred in giving the instruction which is to be found in the second exception. In that instruction it is assumed, that the railroad company refused to pay or accept the order. The court also said the jury were the judges, whether notice of such a refusal was given within a reasonable time to the defendant below."

If in *Crawford vs. Berry,* the sale of the oxen was erroneously assumed by the instruction there given; and in *Brooks vs. Elgin,* the refusal of the R. R. Company to pay or accept the draft, was also improperly assumed in the prayer which the court granted, surely the sale in the present case was quite as fully and erroneously assumed, by telling the jury, if they should "*find that after the sale,*" the delivery was made under the circumstances stated in the instruction, it was not necessary to show that the goods were formally delivered. And no matter how clear and satisfactory the proof was, to establish the sale, the court could not assume that it took place, as it would be an invasion of the rights of the jury.

The court were likewise wrong in refusing to admit the defendant's testimony. The plaintiff had offered evidence to show, that at the time of the sale the goods were "handed over to the defendant and placed under his control, but were not by him removed from the premises." Other evidence was also given by the plaintiff, intended to have an influence on the question of delivery. And as the testimony of the defendant was designed to prove that the property "had never been in the use and possession of the defendant, but the same has been, ever since said sale, in the use and possession of the said H. H. Gaither," it ought to have been admitted.

We concur with the court below on the third, fourth and fifth exceptions, but differ from them in regard to the first, second and sixth.

*Judgment reversed and procedendo awarded.*