BENNET CLEMENT'S, LESSEE, *vs.* HENRY RUCKLE.—*December* 1850.

An escheat grant is *prima facie* evidence of title.

A witness stated that a letter written to himself, the contents of which he offered to prove, was "either lost or delivered to one of the counsel in the cause and that he had made diligent search for it but could not find it," HELD: that this was not sufficient proof of the loss of the letter, to let in parol proof of its contents.

Where a defendant claims but part of the lands in controversy, his proper defence is upon warrant; the lands claimed by him must be located, so as to ascertain for what land, the plaintiff is to get judgment against the casual ejector, and what is to be settled by the jury.

A judgment against the casual ejector must always be entered before the jury are sworn unless the defendant takes defence for all the lands claimed by the plaintiff.

APPEAL from *Allegany* county court.

This was an action of *ejectment* brought by the appellant for a tract of land called "*Lorrain,*" containing 600 acres. The defendant the appellee, under the plea of not guilty, took defence upon his title for eight lots, the numbers of which are stated, "lying west of *Fort Cumberland* the same being part of said tract of land called *Lorrain.*"

1ST. EXCEPTION. The plaintiff offered as his title a patent (an escheat grant) dated the 16th of August 1843, to himself, for twelve lots of land numbered, &c., reduced to one entire tract called "*Lorrain.*" He also offered a certificate of the register of the land office, showing that four of the lots em-

braced in the patent, numbered, &c., were allotted to *Henry Clements* under the act of November session 1788. The defendant then offered to prove by *William Ridgely*, that witness received a letter purporting to be from *Bennet Clements* of *Georgetown*, asking witness to sell a tract of land for him called *Lorrain;* that witness finding, upon examination, that *Ruckle* the defendant had possession of part of the lots, wrote a letter directed to *Bennet Clements*, stating this fact, and received a letter in reply directing witness to see *Ruckle* and compromise with him and sell the lots to him at a fair price; that *Ruckle* refused to purchase, and witness then wrote another letter directed to *Bennet Clements*, asking if he could not make a title independent of the escheat from the heirs of the old soldier, and received an answer stating as near as witness recollects that the heirs of *Henry Clements* the officer or soldier could not make a title to the land; there was a reason given why, which witness does not recollect; "that this last mentioned letter is either lost or delivered to one of the counsel in the case, and that witness made diligent search for the same but could not find it:" witness received near a half dozen letters about this land signed *Bennet Clements*, and thinks he would know the handwriting of the person who wrote them if he were to see it; that witness never saw *Bennet Clements*, nor did he ever see him write, the letter; did not state that there were no heirs, nor that they were dead; that all said letters except the one above mentioned as lost or handed to one of the counsel, are now in witness' possession. The defendant then appeared to prove by *Geo. W. Taylor* that *Bennet Clements*, the plaintiff, lives in *Georgetown, D. C.* To all this testimony, the plaintiff, objected because *Ridgely* does not know the handwriting of *Bennet Clements*, the plaintiff, and there was no foundation laid for its introduction or proof by witness, of the handwriting of the plaintiff, or the contents of said letter, and because it is insufficient and incompetent for the purposes for which it is offered. The court (MARTIN, C. J., and WEISEL, A. J.,) overruled the objection and plaintiff excepted.

2ND. EXCEPTION. The plaintiff then prayed the court to

instruct the jury: 1st. That he is entitled to recover because defendant's evidence is indefinite and insufficient and ought not to be permitted to go to the jury, to prove that *Henry Clements* the original grantee from the State of the four lots in controversy had heirs now living, or that he died leaving heirs at the date of the escheat warrant to the plaintiff. 2nd. That he is entitled to recover, unless defendant can show title in a stranger, and there is no evidence by which the jury can determine such to be the case. The court refused to grant these prayers, and the plaintiff excepted.

The verdict being for defendant, the plaintiff moved for a new trial, on the ground that the verdict was against the evidence, that the court misdirected the jury, and that new evidence had been discovered. This motion the court overruled and gave judgment for defendant, from which the plaintiff appealed.

The cause was argued before SPENCE, MAGRUDER and FRICK, J.

By BEVANS, PERRY and LEE, for appellant, and
By McKAIG for the appellee.

MAGRUDER, J., delivered the opinion of this court.

The plaintiff brought an action of ejectment in *Allegany* county court, for a tract of land called *Lorrain*, and the verdict being against him, he appealed. In the course of the trial he took two bills of exceptions, and whether the court erred in the opinion expressed by it, according to either of those exceptions, we are now to decide.

The plaintiff, to make title to the land claimed by him in his declaration, offered in evidence a patent for that tract of land, granted to himself, and bearing date 16th day of August, 1843. Why he offered in evidence the certificates of the register of the land office, we do not understand. These papers, however, though unnecessary, could not prejudice his title. His patent is an *escheat* grant, which is *prima facie* evidence of title. *Hall vs. Gittings*, 2 *H. & J.*, 112. The defendant thereupon, to show title, it would seem, out of the plaintiff, offered

to examine a witness, and by him prove the contents of letters written to, and received from, *Bennet Clements*.　But the witness never saw his correspondent, and, of course, had never seen him write, nor could he tell whether the plaintiff in this action was his correspondent.

What was the correspondence to prove? A title to the land in controversy, to be out of the plaintiff.　How? Witness inquired of his correspondent if he could not make a title independent of the escheat grant, deriving it from the heirs of *Henry Clements*.　In the answer, he is informed, that the heirs of *Henry Clements* could not make a title to the land. The writer gave a reason, but the witness does not recollect what it was.　It might have been, that those who were his heirs elsewhere were aliens in *Maryland*, and could not inherit the land; or it might have been that the land had been conveyed in fee, to some other person, upon whose death the land had escheated.　Even if the correspondent of the witness had been admitted to be the plaintiff, it is difficult to deduce from the correspondence the fact that it was offered to establish, to wit; that the title was in the heirs of *Henry Clements*.　If it had been, it is difficult to prove why they could not make a title, unless they were minors, lunatics, &c.; and this it cannot be presumed was the reason assigned.

In addition to this, the proof of the loss of the paper was not sufficient to authorize the court to let in parol proof of its contents.

There is one other objection to all this proof offered by the defendant.　The plaintiff claims a tract of land, the patent name of which is *Lorrain*, and claims it by that name.　The defendant, it would seem, claims no land *eo nomine*, or by any other name which *Lorrain* may have acquired by reputation. His defence is, that the patent for *Lorrain* could give the plaintiff no title, forasmuch as the State had previously to the grant, parted with the title to the land, or part of the land included in the grant.　It is to be inferred from all that we read in the record, that the tract of land, claimed by, and patented to the plaintiff, consisted wholly, or in part, of what are called

soldiers' lots; that some of these soldiers' lots were originally owned by *Henry Clements*, spoken of by the witness; but we do not collect, from any part of this record, that the lots of *Henry Clements*, if located, would comprehend all the land which was granted to the plaintiff, as before stated. Indeed, when the defendant took his defence, (not upon warrant, but upon title,) he states, that he takes it for certain lots, (giving the numbers of them,) " the same being *part* of a tract of land called *Lorrain*;" but what part of it, whether the east, south, north or west, it is not stated, though it is said the lots "lie west of *Fort Cumberland.*" Certainly if any such defence be made, the proper defence is upon warrant. The plaintiff's land must be located, the lots for which defence is taken, must also be located, in order to ascertain for what land the plaintiff is to get judgment against the casual ejector, (a judgment which must always be entered before the jury are sworn, unless the defendant takes defence for all the land claimed,) and how much of the plaintiff's claim and pretensions is in controversy, and to be settled by the jury. For the want of these locations the matters in issue are as unintelligible as they would be, if when the defendant takes defence upon warrant, the locations of the parties were made and returned upon separate sheets of paper.

The testimony of *Mr. Ridgely* was inadmissible.

It may be added, that the testimony of *Taylor* could not benefit the defendant.

Of course, the court erred in refusing to grant the first instruction stated in the second bill of exceptions. With respect to the last prayer mentioned in the second exception, to have been made by the defendant, the objection to it is, that the court is asked to say, that the plaintiff is entitled to recover, unless the defendant proves title in a stranger. To be sure defendant did not even attempt to prove title in himself, but there was no more proof of title in a stranger than in himself. The plaintiff's patent (there being no legal proof that any part of the land granted to him had not escheated) entitled him to a verdict.

JUGDMENT REVERSED WITH COSTS, AND

PROCEDENDO AWARDED.