# THOMAS B. HACKETT *vs.* GEORGE W. WEBSTER ET AL.

*Ejectment—Adverse Possession—Defense on Warrant Necessary When Different Parts of the Land Have Been Occupied by Different Tenants of Defendant—Insufficient Proof of Adverse Possession—Color of Title—Evidence—Instructions to the Jury.*

In an action of ejectment·when the defense is adverse possession against the holder of the paper title, a witness who had testified that he had lived upon part of the land, paying rent therefor to the defendant, may be asked whether he remained in possession of the land rented during the entire period of four years spoken of by the witness. Such question did not relate to the legal inquiry of what constitutes possession of land, but relates to the acts of possession previously spoken of by the witness.

In an action of ejectment where the defendant seeks to establish adverse possession by showing that different parts of the land had been occupied by his tenants, he must take defense on warrant and have plats and such locations made as are necessary to show with certainty what parts of the land were actually occupied. The defendant cannot make out his defense of adverse possession by showing that one set of tenants occupied one undefined part of the land and another set of tenants held another part also undefined.

In such case, evidence that the defendont paid taxes upon all of the land is not sufficient to show possession of the whole tract.

Deeds of different parts of the land executed by a defendant who sets up the defense of adverse possession would be admissible in evidence if located on the plats.

When one enters upon land without color of title, his actual possession cannot be extended by construction.

A. conveyed a certain farm to his daughter in 1877 by a deed duly recorded. They lived together on the farm till 1878, when they moved away. In 1880 the daughter married the plaintiff in this case. She died in 1886 and the plaintiff became entitled to a life estate in her lands if she died intestate. In his action of ejectment, brought in 1902, to recover said farm, the defense was adverse possession by A. and those claiming under him for over twenty years. The defendants offered evidence to show that in 1878 A. rented to M. what the latter described as a "two-horse till" of said land with a right to firewood from other parts of it, and that the rest of the farm was rented to N.; that the farm consisted of about 80 or 90 acres of arable land and 30 acres

of timber land; that he cut cordwood indiscriminately from the wood-
land.   No plat or location was made in the case showing the parts of
the land claimed to have been held adversely by defendant through the
tenants M. and N.   M. was in possession for about four years when
other tenants came in and defendants came into possession of the
whole tract about 1887.   *Held,*

1st. That the description of the portions of the land held by the tenants
is too indefinite to establish a title by adverse possession, which only
extends to the land actually occupied, and the jury could not deter-
mine whether the parts of the land occupied by the successive tenants
was the same without plats showing the parts occupied, and the evi-
dence of the witness M. was therefore inadmissible.

2nd. That defendants had entirely failed to show such use of the timber
land as is required to prove adverse possession.

3rd. That deeds of parts of the land executed by A. after the grant to
his daughter, although not sufficient alone to show an adverse claim to
the whole tract, would be admissible evidence tending to establish that
fact provided they could be located.

4th. That an instruction asserting the absolute right of the plaintiff to re-
cover, because defendants had not proved adverse possession, should
not be granted, inasmuch as plaintiff's right to the land depended upon
the death of his wife intestate, and this fact should be found by the jury.

Appeal from the Circuit Court for Dorchester County,
(LLOYD, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Fred. H. Fletcher* (with whom were *P. L. Goldsborough* and
*Jas. Higgins* on the brief ), for the appellant.

*Clement Sullivane* (with whom were *Sewell T. Milbourne*
aud *John R. Pattison* on the brief ), for the appellees.

BOYD, J., delivered the opinion of the Court.

The appellant instituted an action of ejectment against the
appellees for a tract of land in Dorchester County, called
"Jones' Venture," containing 125 acres, more or less.   The
record contains an admission of facts, amongst others that
Nathan Dail Howeth was seized and possessed of a fee-simple
estate in the lands described in the declaration, on the 13th

day of October, 1877, and that on that day he conveyed them to his daughter, Annie S. Howeth, by a deed duly recorded, for a recited consideration of two thousand dollars, the receipt of which is acknowledged. Annie S. Howeth was married to the plaintiff on the 24th of November, 1880, and died on the 17th of March, 1886, leaving her husband and a daughter, Jessie S. Hackett, surviving her. Mrs. Webster, one of the appellees, was a daughter of Mr. Howeth, and the appellees contend that, notwithstanding his deed, Mr. Howeth and his heirs held the property by adversary possession for over twenty years. The first seven bills of exception relate to the admissibility of testimony, and the eighth embraces the rulings on the prayers—eleven of which were offered by the plaintiff and two by the defendants. The Court granted those offered by the defendants and the ninth offered by the plaintiff, the others of the plaintiff being rejected as offered, but the third, fourth, fifth and seventh were granted as modified by the Court.

1. The first exception was to the ruling of the Court in permitting a question to be asked of one Zora Marine. He had testified that in the fall of 1878 he rented "a two-horse till of said lands" from Mr. Howeth "at the rental of 2-5" and he moved upon the lands so rented on the day before Christmas, 1878, and remained there for four years, cultivating them and paying rent therefor to said Howeth. After making some other statements not material to this exception, he was asked, "Please state whether or not you remained in possession of the lands rented by you as tenant of the said Nathan Dail Howeth, during the entire period of four years spoken of by you?" That was objected to but the objection was overruled and he answered, he had. It was said·in *Thistle* v. *Frostburg Coal Company*, 10·Md. 129, that, "Possession is a question of law to be determined by the Court, upon the facts of the case, and where this is the point at issue in the suit, the mere statement of a witness that he *took possession* of the land, without stating the *acts* by which he did so, is not admissible evidence," but this witness did state his acts and the question

was evidently intended to simply ascertain from him whether he continued to do what he had already spoken of during the whole period of four years, and was not intended to prove that what he did amounted to possession under the law. Under the circumstances we do not see how the plaintiff could have been prejudiced by the form of the question.

2. It will not be necessary to discuss separately all of the exceptions presented by the record, and as one of the most important questions is presented by the second, third and fourth bills of exception and the special exceptions to the defendants' prayers we will consider them together. The defendants rely entirely on the alleged adverse possession of Mr. Howeth and his hers. After Mr. Howeth conveyed the property in controversy to his daughter, they lived on it until December 24th, 1878, when they moved to another place a short distance away, where they lived together until the 24th of November, 1880, when she married the plaintiff. The day Howeth and his daughter left this property Marine moved on some part of it under his rental of the "two-horse till" spoken of. He also testified "that in the neighborhood of said lands it is a universal custom that firewood goes with a rented farm, and that the balance of the lands mentioned in the declaration, a one-horse till, was rented to a colored man, Nathan Jackson." On his cross-examination he stated that the lands consisted of "about 80 to 90 acres of arable land, and that the balance, some 30 acres, is timber land; that in renting from Mr. Howeth nothing was said about the timber land; that while he was a tenant on said lands he went indiscriminately over the woodland and cut cordwood for the use of his family and also to get fencing for the farm; that he knew nothing about Jackson's lease, or from whom he rented, but simply knows that he saw him hauling corn to the said Howeth, which he supposed to be rent, and that when he left the lands rented by him, the defendant, George W. Webster moved upon the same." Marine's testimony had been admitted subject to exception, and the plaintiff moved to exclude such parts of it as tended to prove ad-

verse possession on the part of Howeth, through his tenant
Marine, of any part of the lands mentioned in the declaration,
on the ground that there were no plats or locations to point out
the part of the lands in dispute claimed to have been adversely
possessed by Howeth, through Marine, but the Court over-
ruled the motion and that ruling is presented by the second
bill of exceptions.    It will be observed that the only descrip-
tion of the part rented by Marine, is "a two-horse till of
said lands" and his testimony shows that "a one-horse till"
was rented to Jackson.    There is nothing in the record to ex-
plain those terms, but assuming that they have a well known
meaning in that community, it is manifest that the description
of the precise portions of the lands rented by those tenants is
wholly indefinite.    The witness was even uncertain as to the
amount of arable land in the tract—said it consists "of about
80 to 90 acres,"—and it is difficult to imagine a more indefi-
nite description of a tract of land sought to be held by ad-
verse possession by one who did not occupy it himself, but by
successive tenants, than Marine gave.    When one enters upon
land without color of title, his possession cannot be extended
by construction, as is done in favor of one who has entered
under color of title.    It is not pretended that Howeth had any
paper title, after he made the deed to his daughter, and if it
be conceded that Marine's possession was his possession, it
could not be extended beyond what he actually occupied or
used.    The fact that he occasionally went upon the timber
lands and took from it cordwood and timber for fencing, did
not give Howeth any foundation for a claim beyond what he
had rented to Marine, and he did not rent the timber lands to
him.    Adopting the most favorable theory for the appellees,
that can be claimed from the testimony, this tract of land was
divided into three parts—the "two-horse till," "the one-horse
till" and the timber lands.    The appellees could not establish
such adverse possession by Howeth and his heirs as is neces-
sary to defeat the paper title without proving that it was ex-
clusive and continuous for twenty years.    Marine only occu-
pied the "two-horse till" for four years, and in order that the

jury could determine whether his successor was in possession of the same land, it was of the utmost importance that they be informed with certainty as to the precise lands so occupied by them respectively. Under such circumstances as this record discloses the proper way, under our practice, to give them that information is to take defense on warrant and have plats and such locations as are necessary to make it certain what was actually so occupied or used, unless the necessity for that is avoided by agreement, as of course it can be.

It was said in *Clement* v. *Ruckle*, 9 Gill, 326, that "Where a defendant claims *but part of the lands in controversy*, his proper defense is upon warrant ; the lands claimed by him must be located, so as to ascertain for what land the plaintiff is to get judgment against the casual ejector, and what is to be settled by the jury." It is true these defendants claim all the lands in controversy, but they do so by attempting to establish possession through, at least, two different channels in addition to the timber lands. It was possible for them to prove adverse holdings of a part of the tract sued for, and to fail in their proof as to the balance. Indeed we think there has been an utter failure to establish such use of the timber lands as the law requires to prove adverse possession, especially under the circumstances of this case, where Howeth had conveyed the land to his daughter and they lived together for several years. If the jury was satisfied that Howeth and his heirs did hold adversely as to part, but not as to the rest, then the plaintiff was entitled to recover the part not so held. Yet how could they render a verdict for that which the plaintiff was entitled to without proper descriptions of the several parts? In *Newman* v. *Young*, 30 Md. 417, it was said : "Under the law and practice in this State, when parties set up adverse claims to lands under different titles, the only mode of pointing out to the jury the land actually embraced within the lines and boundaries described in patents, deeds or other title papers, is by plats and locations ; by that means alone could there be furnished to the jury any certain evidence upon which they could form a verdict." And in a case like this where the adverse

possession is attempted to be established by proof of posses-
sion of *different parts of the land* in controversy, by different
tenants, plats and locations can alone furnish the jury "any
certain evidence upon which they could form a verdict." The
proof offered of payment of taxes, etc., was not sufficient to
establish possession of the whole tract. It was impossible to
remedy the failure of Marine to show what part of the tract
he had been in possession of by any subsequent testimony, as
it is not pretended there were any plats, and the motion to
exclude his evidence reflecting upon the question ought to
have been granted.

What we have said is equally applicable, if not more so, to
the testimony contained in the third bill of exception. It re-
ferred to "the one-horse till" occupied by Nathan Jackson.
The evidence is very indefinite as to the length of time he re-
mained there, aud it was not attempted to show the precise
land he occupied. As it was attempted to show that at least
three other persons cultivated the lands previously occupied
by Jackson, before the defendant Webster took possession of
it, the necessity for clear and definite proof as to the land ac-
tually occupied by these different parties, as well as the time
each occupied it, seems to us to be manifest.

The motion to exclude the testimony of Webster as stated
in the fourth bill of exceptions should also have prevailed. It
may be said that there is some evidence tending to show that
Webster was in possession of the whole tract, after he took
possession of both of what may be designated by the "Marine"
and "Jackson" tracts. If it be conceded that his possession
then included the timber lands (which is at least doubtful as
disclosed by the record) and all of the arable land, he did not
have such possession long enough to avail the defendants in
the only defense made by them. He only moved on to the
"Marine Tract" in 1882 and testified that Jackson lived on the
part occupied by him "at least five or six years" after he
(Webster) moved on the "Marine Tract." Three other ten-
ants are said to have cultivated that, each for a year, before
Webster took it, so even if we ignore the agreement dated

December 31st, 1898, by which the appellees agreed to pay the rent for 1898 to the party in whom the title may be determined to be, it is clear that Webster did not claim to be in possession of the whole tract sued for long enough to establish adverse possession through him alone. If he had been, then it might not have been necesssary to have plats and locations made, for we do not mean to say that possession of an entire parcel or tract of land can never be shown without plats and locations, but when, as in this case, there is an attempt to establish possession of the whole by showing that one set of tenants occupied one part and another set another part, then it is necessary to prove with certainty the parts so respectively held.

We are not unmindful of section 77, etc., of Article 75 of the Code. The Act of 1852 and subsequent Acts were passed to prevent warrants of resurvey from being unnecessarily issued, as they had been not only expensive but at times oppressive and calculated to do great injustice to plaintiffs in ejectment and other cases. But when defendants undertake to defend against the owner of the record title, without claim of right other than what they have by adverse possession, they cannot do so by showing that one set of tenants occupied one undefined part of the tract in controversy and another set of tenants held another part, equally undefined and uncertain, and as the evidence in these three bills of exception was altogether indefinite and not sufficient to enable the jury to reach a proper conclusion as to what parts of the tract were so held by the tenants, it ought to have been excluded.

Each of the two prayers of the defendants was especially excepted to, amongst other reasons, "because said prayers assumed that the acts of user and possession, given in evidence, extended over all the land in dispute," and "because there was no legally sufficient evidence to show adversary possession on the part of the defendants or either of them and those under whom they claim, of the whole land in dispute, in the manner and for the period required by law." From what we have already said it is apparent that in our opinion the testi-

mony did not justify the claim that the whole tract sued for was so held by Howeth through his tenants as to amount to adverse possession. Yet the first prayer speaks of the property as "said farm"—thereby assuming that the evidence offered related to the entire tract, and it concludes against the right of the plaintiff to recover. There is no legally sufficient evidence to show adversary possession of all the lands in dispute. It is not pretended that either Marine, Jackson or any of the tenants, at least prior to Webster, rented the timber land. The most that the testimony shows is that Marine rented the "two-horse till" and Jackson .the "one-horse till" and that both had the privilege (from Howeth) of getting cord wood and timber for fencing. There is no evidence whatever to show that Annie S. Howeth knew that either of them was using the timber. The first prayer is defective in other respects, one of which we will mention. It left to the jury to find that Howeth rented out said farm from the year 1878 to the date of his death in 1897, and after referring to the payment of taxes, etc., says, "then said acts were hostile in their character, if his said claim was made and said acts done to the knowledge of said Annie S. Howeth." It is admitted that she died on the 17th of November, 1886, and it was therefore impossible for her to have knowledge of those acts from 1878 to 1897, and the prayer did not leave to the jury to find whether the plaintiff knew that Howeth had asserted or was asserting claim to the property after he became entitled to a life estate. The deed to Annie S. Howeth was only made nine years prior to her death. So without referring to other grounds of special exceptions to this prayer, those we have mentioned ought to have been sustained. The second prayer was also objectionable for the reasons set forth in those two special exceptions.

3. The fifth, sixth and seventh exceptions present the rulings of the Court on objections by the plaintiff to the admissibility of three deeds made by Howeth for portions of this tract. The first was dated March 30th, 1878, the next August 9th, 1890, and the other January 7th, 1892. They were

offered as part of the testimony of the defense to show that Howeth was asserting a claim to the property. In order that the statute may operate upon the rights of the true owner, the possession must not only be adverse, exclusive and continuous, but must be of such character as may give the owner some knowledge, or means of knowledge, that the possession is adverse to his title. As these deeds were doubtless offered for that purpose, they might have been admissible if there had been plats and they had been located, but for the reasons stated above it was not proper to admit them in the absence of such plats and locations. Of course they would not of themselves be sufficient to establish an adverse claim for the whole property, but they could be used as evidence tending to establish the fact, if they could be located. How the one of 1892 could be located, it is difficult to see, as there is no proper description of the property attempted to be conveyed.

4. The first and second prayers offered by the plaintiff were to the effect that there was no legally sufficient evidence of adversary possession in the defendants or those under whom they claim and the verdict must be for the plaintiff. The first was clearly erroneous, as it merely relied on the failure of the defendant to prove adversary possession to entitle the plaintiff to recover, but the second referred to the pleadings and to the agreed statement of facts, which admitted the title was in Annie S. Howeth, on the 13th of October, 1877, and the appellant claims that the admitted facts entitled the plaintiff to recover, if there was no legally sufficient evidence of adverse possession. But it would be a dangerous precedent to grant a prayer such as this in an ejectment case. It was essential to the right of the plaintiff to recover to prove that his wife died intestate, as his life estate depended on that fact, and although we do not see any contradiction of his testimony on that subject the record does not show that it is admitted, and it was for the jury to pass upon. Both prayers were therefore defective, inasmuch as they asked the Court to instruct the jury to render a verdict for the plaintiff. There being no sufficient evidence to show what particular parts of the land sued for

were held by Howeth, through his tenants, there was no legally sufficient evidence of adverse possession, but as the Court erroneously permitted evidence of possession of parts of the tract, and the case was tried on the theory that such evidence was admissible, we would not be justified in reversing the judgment, without awarding a new trial, as suggested by the appellant, if the prayers were not defective. But in addition to that we cannot assume that by the use of the plats and locations, the appellees cannot produce sufficient evidence.

5. The appellant has no reason to complain of the Court's action on the third, fourth, fifth and seventh prayers. As offered, they were clearly erroneous and as modified by the Court they gave the appellant all he could ask from the evidence mentioned in them. The seventh as amended concluded with the right of the plaintiff to recover upon the jury finding the facts stated in it, without leaving it to the jury to determine whether Annie S. Hackett died intestate. The sixth was properly rejected. It asks the Court to say that if the jury believe that Howeth said to T. C. Reid in or about the year 1890, that he had given a deed for the land in dispute to his daughter, or words to that effect, then their verdict must be for the plaintiff. If he did say so, he only said what the agreed statement of facts admitted, and his simply stating that conceded fact to a witness could not entitle the plaintiff to recover. What we have said about the first and second prayers will relieve us of the necessity of saying anything about the eighth, further than it was properly rejected. Nor is it necessary to discuss the 10th or 11th.

For errors in overruling the motion to strike out the evidence in the second, third and fourth bills of exception, and in granting the defendant's first and second prayers, the judgment must be reversed.

*Judgment reversed, and new trial awarded, the appellees to pay. the costs.*

(Decided June 30th, 1903.)