SCHLUETER ET AL. *v.* ACKERMAN

[No. 96, September Term, 1957.]

*Decided December 20, 1957.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

Submitted on brief by *William C. Rogers* and *Daniel M. Murray, Jr.,* for appellants.

*John L. Clark,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

At the instance of the vendor, the chancellor decreed specific performance of a contract of sale for a sixty acre tract of land on Montevideo Road in Howard County, overruling the objection of the buyers that the title was not good and merchantable because record title to portions of the tract was in others than the vendor. Judge Macgill filed a clear and correct opinion, which we adopt, in which he set forth the stipulation of the parties, the facts he found, and the controlling law, saying:

> On September 18, 1956, Anna Elizabeth Ackerman agreed to sell to Emanuel C. Schlueter and Mary A. Schlueter, his wife, and Philip J. Hauswald and Norma A. Hauswald, his wife, a tract of land containing sixty acres of land, more or less, lying in the First Election District of Howard County. The buyers have refused to take title to this property on the ground that the title is not good and merchantable since record title to certain portions of the tract are in names other than that of the seller. Miss Ackerman has, thereupon, filed her bill against Mr. and Mrs. Schlueter and Mr. and Mrs. Hauswald for a specific performance of the contract.
>
> The following has been stipulated: "It is stipulated and agreed by counsel for the parties hereto as follows:
>
> "That the Amended Contract dated the 18th day of September, Nineteen Hundred and Fifty-six, between the parties to this cause, is a valid contract, and is filed herewith as Complainant's Exhibit C.
>
> "That the 'Description of the property of Anna Elizabeth Ackerman, at Montevideo, First Election District, Howard County, Md.', containing 57.994 acres, dated September 19, 1956 and signed by J. R. Curtis, Ellicott City, Md., filed as Respondent's Exhibit F, is a true description of the property which Anna Elizabeth Ackerman has contracted to convey to the defendants under the Amended Contract of

Sale referred to above dated the 18th day of September, Nineteen Hundred and Fifty-six, and is intended to include all of the property presently owned by Anna Elizabeth Ackerman, at Montevideo, in the First Election District of Howard County.

"That the property as described in said description contains all of the property (60 acres more or less) which was conveyed to Robert T. Mavin from Lawrence V. Miller and wife by deed dated September 14, 1892, recorded among the Land Records of Howard County in Liber J.H.O. No. 59, folio 14, filed herewith as Respondent's Exhibit *I* less that portion deeded by the said Robert T. Mavin (unmarried) to the Baltimore and Ohio Railroad Company, by deed dated March 1, 1907, recorded in Liber W.W.L.C. No. 83, folio 388, filed herewith as Respondent's Exhibit *2* and Complainant's Exhibit *B* referred to in said deed as 3.68 acres, more or less.

"That Robert T. Mavin recorded on June 16, 1906, a Plat of the 60 acres more or less, being a part of the same property acquired from Lawrence V. Miller and wife as aforesaid, which he called 'Montevideo', subdivided in blocks and lots, recorded in Liber W.W.L.C. No. 82, folio 175, and another Amended Plat of 'Montevideo' on March 6, 1907, recorded in Liber W.W.L.C. No. 83, folio 399, certified copies of which two Plats are herewith filed as Respondent's Exhibits *A* and *B,* respectively.

"That between the years 1896 and 1909, the said Robert T. Mavin by 89 deeds conveyed away 184 of the lots in 'Montevideo' (187 by actual count, 3 being the same lots to the same persons). The two Plats of 'Montevideo' referred to above, with the 184 different lots which were conveyed by Robert T. Mavin, marked in red, are also filed herewith as Respondent's Exhibits *D* and *E,* respectively. These 184 lots are the same on both Plats.

"That certified copies of the 89 deeds for the lots

referred to, conveyed away by Robert T. Mavin, are filed herewith as Respondent's Exhibits 3-91 inclusive. A Summary of said 89 deeds giving the date of deed, date and place of recording, parties, title reference and location is also filed as Respondent's Exhibit *C*.

"That Robert T. Mavin died testate on December 20, 1909, and his Will was admitted for probate in Baltimore City where his estate was administered. Respondent's Exhibit 94. (Estate Docket 4, folio 431.) All of his estate, real and personal, was left to his sister, Annie M. Cooksey, who was his sole heir at law.

"That by deed dated January 13, 1921, recorded in Liber H.B.N. No. 111, folio 553, filed herewith as Respondent's Exhibit *92,* the said Annie M. Cooksey, widow, conveyed said entire 60 acres more or less by metes and bounds description to Elizabeth E. DeMoss and William Graham Ackerman as tenants in common. No mention is made of lot numbers or of the recorded Plats.

"That by deed dated July 23, 1937, Elizabeth E. DeMoss and William Graham Ackerman conveyed said 60 acres more or less to Hewlett B. Cox (straw party) (recorded in Liber B.M. Jr. No. 185, folio 182) filed herewith as Respondent's Exhibit *93,* who with his wife, Myrna E. Cox, conveyed said property, by deed dated the same date, to Elizabeth E. DeMoss and Anna Elizabeth Ackerman as joint tenants (recorded in Liber B.M. Jr. No. 185, folio 183) filed herewith as Complainant's Exhibit *A*.

"That Elizabeth E. DeMoss died on January 12, 1951. Her husband, Cornelius A. DeMoss had predeceased her on July 10, 1925.

"That the said 184 lots conveyed away by Robert T. Mavin were never reconveyed to Robert T. Mavin or to his successors in title.

"That the Exhibits referred to in this Stipulation as filed are to be considered a part hereof."

In addition to the stipulation, the evidence shows that since 1922, the property involved has been assessed as a tract of sixty acres of land, together with improvements, in the name of DeMoss and Ackerman until 1956, when the dwelling house, having burned down, was taken off the assessment books. The property is presently assessed in the name of Anna E. Ackerman. The State and County taxes, during that period, have been paid by those to whom the property has been assessed.

Miss Anna Elizabeth Ackerman, the daughter of Mrs. Elizabeth E. DeMoss, testified that her mother and her brother bought the property from Mrs. Cooksey on January 13th, 1921. Later, by a straw deed, the property was transferred to Mrs. DeMoss and Miss Ackerman as joint tenants. Mrs. DeMoss died on January 12th, 1951, leaving Miss Ackerman, surviving joint tenant, as sole owner.

According to Miss Ackerman, when her mother bought the property it was in a state of disrepair. Mrs. DeMoss and her family cleared the land and used it for truck gardening and raising corn. They actually moved onto the property in 1919 and remained there until January, 1929. Thereafter, the property was rented to tenants who farmed it until August 28th, 1953, when the dwelling house was destroyed by fire.

To Miss Ackerman's knowledge, no one, since the possession of her family and herself, has ever asserted a contrary interest or title in the property. The streets and roads shown on the plats offered in evidence, existed solely on paper, and were never laid out, nor were they used by the general public. In fact, they did not provide access to any public road. The property was treated by Miss Ackerman and her family as one tract, and the lot lines, as shown on the plats, were ignored.

Mr. John Thomas McAdoo, a neighbor who has lived across the road from the property since 1920,

testified that he had known the DeMoss-Ackerman family since that time and was familiar with the boundaries of their farm. He had helped Mrs. De-Moss' sons in their farming operations. The entire property was occupied and farmed by that family and there was never any question in the neighborhood as to their ownership. The streets and roads, as shown on the plats, had never been laid out, nor had they been used by members of the general public. The testimony of another neighbor and acquaintance, Mr. J. Frank Curtis, who had known the DeMoss-Ackerman family since 1920, was to the same effect.

This Court is of the opinion, on the application of the rulings of the Court of Appeals in *Taussig v. Van Deusen,* 183 Md. 436, and *Arcadia Investment Corporation, Incorporated v. Crown Cork & Seal Company, Incorporated,* 190 Md. 106, to the facts and evidence submitted, that the Complainant has established a good and merchantable title by adverse possession for the statutory period of twenty years to the entire property described, including the platted streets. A decree granting the Complainant the relief for which she prays will be signed when presented.

We supplement the chancellor's opinion to answer more fully the appellants' contention that Miss Ackerman and her mother did not, in good faith, claim under color of title, believing their claim to be well founded and their title good, and, therefore, their adverse use did not establish title to any land not actually occupied—that they could not claim by constructive possession. Appellants say that the knowledge of Miss Ackerman and her mother of Mavin's conveyance of the lots negates a bona fide belief of good title. It is urged that it was not shown specifically what parts of the farm were fenced or cultivated and, particularly, that the cutting of firewood was not enough to constitute actual possession of the timber land under the holding of *Hackett v. Webster,* 97 Md. 404, 408; *Malone v. Long,* 128 Md. 377, 380.

We think it plain that there was enough to show bona fide belief in a good paper title. In *Gore v. Hall*, 206 Md. 485, 490-491, it was said: "The paper title, in order to give color, must be so far *prima facie* good in appearance as to be consistent with the idea of good faith * * *." Mavin sold the lots for $17.00 a lot through misleading, if not fraudulent, advertisements in Baltimore newspapers that showed pictures of houses already built and streets and avenues laid out. It would appear that most of the purchasers never saw the lots they bought either before or after buying them, and that those who did were so influenced by the rugged appearance and unimproved state of the property and their small investment, as to make no further claims. It would appear that Mavin was prosecuted for fraud for the sale of the lots, that he pleaded insanity, and died in a mental institution. His sister inherited the property at his death in 1909. Miss Ackerman and her family began to live on the property in 1919, and cleared and cultivated it. They bought it after they had lived there two years. It would seem clear that no one claimed any part of the property from the time of Mavin's death until they moved on the land ten years later or during the two years they occupied it before they bought it. Certainly, they would not have paid out their good money for the purchase price and taken a deed unless they believed that they were acquiring a good title. At the time of the settlement, their lawyer advised them that the county commissioners had agreed to ignore the plat and to restore the property to its metes and bounds descriptions for tax purposes. As the chancellor found, the outlines of the property were well established, and all of it was claimed and actually used or occupied by her mother and Miss Ackerman and their tenants. On the facts before us and the holdings of prior decisions, this was enough to give them good title to all of the farm, including the woodland. *Gore v. Hall*, cited above; *Ridgely v. Lewis*, 204 Md. 563; *Bishop v. Stackus*, 206 Md. 493. The decree is affirmed.

*Decree affirmed, with costs.*